# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCE EDWARD JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>S. HONNOLD,<br><br>    Defendant. | **1:15-cv-01118-LJO-MJS (PC)**<br><br>**ORDER**<br><br>    **(1) DENYING PLAINTIFF'S MOTION TO FILE SURREPLY;**<br><br>    **(2) STRIKING PLAINTIFF'S SUPPLEMENTAL OPPOSITION FILINGS;**<br><br>    **(3) DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 39, 52, 55)**<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in foma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. This matter proceeds on a First Amended Complaint ("FAC") against Defendant S. Honnold on a single Eighth Amendment deliberate indifference claim. Now pending is Defendant's motion for summary judgment, which Plaintiff opposes. Also pending is Defendant's motion to strike Plaintiff's sur-opposition.

**I.    Plaintiff's Allegations**

1

On April 25, 2014, while housed at the Pleasant Valley State Prison ("PVSP"), Plaintiff provided Defendant, a building maintenance instructor and Plaintiff's new supervisor, with a job transfer slip based on Plaintiff's pain and health problems. Defendant ignored the slip and failed to assign Plaintiff elsewhere even though Plaintiff was "medically disqualified" for work. Defendant told Plaintiff to seek re-assignment from his counselor. A counselor then told Defendant to re-assign Plaintiff, but Defendant refused, until May 16, 2014, to submit reassignment papers. As a result, Plaintiff was required to work in the maintenance shop until May 23, 2014, his pain and health problems worsened, and he required a year of physical therapy.

## II. Defendant's Motion to Strike

### A. Background

On February 27, 2017, Defendant filed the pending motion for summary judgment. (ECF No. 39.) Plaintiff was granted two extensions of time to file his opposition. (ECF Nos. 43, 46.) Pursuant to the second order, Plaintiff's opposition was due on or before June 14, 2017.

On June 14, 2017, Plaintiff submitted to the PVSP prison mail office over 180 pages in opposition to Defendant's motion. (ECF Nos. 48, 49.) He also included this note on the Proof of Service form: "Copy machine stop working [-] send other motion when copier work." (ECF No. 48 at 13.) On June 26, 2017, Defendant filed a reply. (ECF No. 50.)

On July 7, 2017, Plaintiff filed four additional documents opposing Defendant's motion for summary judgment[1]: (1) Opposition to Defendant's Statement of Undisputed Facts (ECF No. 51); (2) Complete Opposition to Defendant's Motion for Summary Judgment (ECF No. 52); (3) Response / Motion to Opposition of Defendant's Motion for Summary Judgment Addendum Exhibits (ECF No. 53); and (4) Notice of Opposition to Defendant's Motion for Summary Judgment (ECF No. 54). The Court construes these

---

[1] Each document was signed by Plaintiff on June 29, 2017, but none includes a proof of service. Pursuant to Local Rule 135(c), "[e]xcept for ex parte matters, a paper document shall not be submitted for filing unless it is accompanied by a proof of service."

filings as a sur-reply and further construes Plaintiff's "Complete Opposition to Defendant's Motion for Summary Judgment" (ECF No. 52) as a motion for leave to file a sur-reply. Defendant moves to strike these filings. (ECF No. 55.)

### B. Discussion

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired. E.D. Cal. Local Rule 230(l). The Court generally views motions for leave to file sur-replies with disfavor. Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes–Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

In this Circuit, courts are required to afford pro se litigants additional leniency. E.g., Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). This leniency, however, does not extend to permitting surreplies as a matter of course, and the Court is not generally inclined to permit surreplies absent an articulation of good cause why such leave should be granted.

In the "Complete Opposition to Defendant's Motion for Summary Judgment," Plaintiff seeks leave of Court to file additional documents on the ground that the copy machine at PVSP had no ink cartridge on June 14, 2017, and the earliest date he was able to obtain photocopies of the remainder of his opposition was June 29, 2017. He states, "Plaintiff now sends to the court and defendant the complete opposition (because

3

[Plaintiff] could only send half of it in diligence to make the deadline, than not sending anything at all. [Plaintiff] send [sic] what he could.)" (ECF No. 52.)

In support, Plaintiff submits a CDCR 22 form ("Inmate / Parolee Request for Interview, Item or Service") dated June 14, 2017, and complaining about the copy machine: "The law library's copy machine does not work, and has no toner for (2) weeks." He indicates that he was able to get some photocopies before the machine "went out," but would need to "stagger some legal work to move my deadline." (ECF No. 53 at 2.) The PVSP Senior Librarian responded to Plaintiff's CDCR 22 form on June 20, 2017. (ECF No. 53 at 3.) This response made no mention of a broken copy machine and instead simply informed Plaintiff that he was ducated for library access on June 29, 2017.

Upon review of Plaintiff's motion and the documentation filed in support, the Court finds Plaintiff's rationale for his inability to file a complete and timely opposition unconvincing. First, Plaintiff did not seek leave to supplement his June 14, 2017, opposition at the time that he filed it. Instead, he wrote a vague note on the Proof of Service: "Copy machine stop working [-] send other motion when copier work." In addition, and contrary to Plaintiff's suggestion, there is nothing verifying that the copy machine was not functional on June 14, 2017. Plaintiff also fails to explain how he was able to obtain 180+ pages of photocopies from a copy machine that had no toner for two weeks. Finally, Plaintiff fails to explain why the supplemental filings in opposition to Defendant's motion, which were ostensibly ready for photocopying on the date due, are signed and include a typewritten date of June 29, 2017, suggesting they were prepared long after the filing deadline for his opposition.

For these reasons, Plaintiff's motion for leave to file a surreply will be denied, and the documents filed on July 7, 2017, will be stricken. Defendant's motion to strike will therefore be denied as moot.

### III. Legal Standards for Summary Judgment

Any party may move for summary judgment, and "[t]he [C]ourt shall grant

4

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Id. at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. See Liberty Lobby, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984

(9th Cir. 2007).

**IV.    Undisputed Facts**

The following facts are deemed undisputed unless otherwise indicated:

At all times relevant to this action, Plaintiff was incarcerated at PVSP in Coalinga, California. See FAC at 1, 5. Defendant Honnold is a civilian employee who was employed at PVSP as the Vocational Building Maintenance ("VBM") Program instructor. Decl. of S. Honnold in Supp. Def.'s Mot. Summ. J. (ECF No. 39-3) ¶ 1.

### A.    Plaintiff's Medical Condition and Medications

Plaintiff suffers from pre-existing chronic pain in his neck and back. Pl.'s Dep. at 151:17-20. During the relevant period, Plaintiff was prescribed Terazosin for urinary issues and Tylenol 3 (acetaminophen with codeine) for a pinched nerve, neck spasms, and lower back pain. Id. at 62:22—64:13. In February 2014, Plaintiff began visiting a physical therapist twice a week to reduce spine swelling. Id. at 69:4-8; 76:1-14.

### B.    Plaintiff's Assignment to the VBM Program

On or about April 25, 2014, the Inmate Assignment Office assigned Plaintiff to the VBM Program Monday through Friday, 7:00 a.m. to 3:30 p.m. Pl.'s Dep. at 28:7-9, 36:25—39:10, and 93:18—94:1. The VBM office is located in a different part of the prison and requires a gate pass. Honnold Decl. ¶ 9.

On the same day that he was assigned to the VMB Program, but before obtaining a gate pass, Plaintiff briefly visited Defendant's office and showed him a March 14, 2013, Comprehensive Accommodation Chrono ("the CA Chrono"); an April 18, 2014, Medication Reconciliation form and others going back to January 2013; and a Work Change Application form. Pl.'s Dep. at 49:20—51:3, 92:2-13.

The CA Chrono included a bottom bunk accommodation and the following work restrictions: "no lift > 20 LB, no repetitive bending, stooping or twist[ing]." Pl.'s Opp'n Ex. 3 (ECF No. 49 at 77). These restrictions take into account the effects of Plaintiff's prescription medication. See Pl.'s Dep. at 84:19-22; 85:6-10; 87:13-17. The Medication Reconciliation form noted active prescriptions for Tylenol with codeine. Pl.'s Opp'n Ex. 2

6

(ECF No. 49 at 66.) Plaintiff sought reassignment as a porter through the Work Change Application form. Pl.'s Opp'n Ex. 1 (ECF No. 49 at 63).

Defendant is able to recommend that an inmate be unassigned from the VBM class when presented with valid documentation, but he does not have the authority to unassign the inmate himself. Honnold Decl. ¶ 5. Instead he must complete a CDC Form 128B chrono recommending unassignment and providing a basis for the recommendation. Id. ¶ 6. This form must be approved by Defendant's supervisor. Id. If approved, it is forwarded to the inmate's counselor. Id. If the counselor agrees with Defendant's recommendation, the inmate receives a classification hearing, during which he may be unassigned. Id. In Defendant's experience, it typically takes approximately two weeks for an inmate to be unassigned once Defendant recommends unassignment. Id. ¶ 7.

After this brief meeting on April 25, 2014, Defendant did not sign the Work Change Application form or submit an unnassignment request. Pl.'s Dep at 50:25—51:9. Instead, he told Plaintiff that they would resolve the issue once Plaintiff obtained a gate pass. Id. at 51:3-9.

### C. The VBM Program

On April 28, 2014, after he obtained a gate pass, Plaintiff showed up for his first day at the VBM Program work assignment. Pl.'s Dep. at 44:9-21. There, he again presented Defendant with the paperwork shown on April 25, 2014. Id. at 94:23—95:3.

#### 1. The Outdated CA Chrono

There is a dispute as to whether the CA Chrono was outdated by the time Plaintiff showed it to Defendant. Defendant posits that the chrono was outdated. Honnold Decl. ¶ 8. Plaintiff claims that only that portion concerning a bottom bunk was outdated. Pl.'s Dep. at 85:2-10.

Per the instructions on the CA Chrono, "A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the

7

accommodation is temporary, write the date the accommodation expires on the line."
Pl.'s Opp'n Ex. 3 (ECF No. 49 at 77).

On March 19, 2013, the physician who completed the CA Chrono circled P next to "Bottom Bunk" and wrote "1Y" next to it. There is no notation for either P or T next to the "Physical Limitations to Job Assignments," which sets forth Plaintiff's work restrictions. Assuming that this latter accommodation was permanent, the CA Chrono's instructions further provide that "Chronos indicating permanent accommodations shall be reviewed annually." Plaintiff acknowledges that chronos have to be updated yearly. Pl.'s Dep. at 131:5-10.

The CA Chrono was thus overdue for annual review by the time Plaintiff showed it to Defendant in late-April 2014. An outdated chrono is no longer valid and need not be honored. Honnold Decl. ¶ 8. Regardless, Defendant believed that the work restrictions listed therein could be accommodated in the class. Id. Defendant thus directed Plaintiff to continue reporting to the VBM class as long as he was assigned to it. Id. ¶ 9.

### 2. Plaintiff's Duties

Plaintiff showed up to the VBM class every day during the allotted times. Pl.'s Dep. a 97:12-19. Over the course of the first week, Defendant gave Plaintiff a tour of the shop, explaining the purpose of the equipment, showing the location of the chemical flushing stations, and discussing shop safety. Id. at 97:14—99:2.

Beginning on April 30, Plaintiff was assigned book work to learn how to use the equipment. Pl.'s Dep. at 100:19-24. During this time he sat at a table with benches and wore safety goggles. Id. at 102:14-22.

During the second and third weeks, Plaintiff viewed demonstrations by other inmates of the things he learned in the books. Pl.'s Dep. at 111:20-22. He then assisted the inmates' work by sweeping the floors, wiping down tables and surfaces, planing wood with a handheld file while sitting, and buffing (also while sitting down). Id. at 112:13—114:18. Half of Plaintiff's time was spent on book work and the other half was spent assisting the other inmates. Id. at 115 at 21-24; 120:6-15.

8

Repeatedly over the course of a number of days, Defendant asked Plaintiff to sign a work contract / safety agreement. Pl.'s Dep. at 96:24—97:1; Pl.'s Opp'n Ex. 4 (ECF No. 49 at 81-87); Id. Ex. 9 (ECF No. 49 at 105). The inmate contract sets forth student responsibilities and basic safety information relating to the tools and chemicals found in the class. See Pl.'s Opp'n Ex. 9. Plaintiff refused to sign this paperwork, believing that doing so would imply his physical ability to perform the duties of the job. Pl.'s Dep. at 95:20-23. Plaintiff contends that Defendant violated California Department of Corrections and Rehabilitation ("CDCR") regulations by keeping Plaintiff in the shop in the area of the equipment and giving him work assignments despite Plaintiff's refusal to sign the paperwork. Id. at 101:16—102:10.

Plaintiff never used the bandsaw or table saw while assigned to the VBM Program. Pl.'s Dep. at 114:25—115:4. He only did things that he could medically do within his work restrictions. Id. at 115:10-13; 117:17-22; 124:13—125:2. Plaintiff admits that Defendant never made Plaintiff do things beyond his work restrictions. Id. at 119:10-13. At one point, Plaintiff attempted to go up a ladder, an act in excess of his work restrictions, but Defendant instructed him not to because he hadn't signed the safety paperwork and because he did not want Plaintiff to get hurt. Id. at 146:19—147:11.

As Plaintiff continued to report to the class, Defendant asked him every other day to see a doctor to determine if there was any other job he might do in the class while on his prescribed medications. Pl.'s Dep. at 79:1—80:24. Plaintiff claims Defendant tried to get Plaintiff to influence the doctor to have Plaintiff stay in the VBM Program. Id. at 84:2-14. The doctor was not so influenced. See id.

Defendant also directed Plaintiff to meet with his counselor to obtain an unassignment, but the counselor said that Defendant was responsible for unassigning. Pl.' Dep. at 81:3-12, 124:1-3, 133:20-22

When Plaintiff had the proper documentation, he was permitted to attend medical, physical therapy, and law library appointments during class hours. Honnold Decl. ¶ 12.

Defendant was not aware that Plaintiff had any medical need not already

9

addressed by medical personnel or that simply being in the VBM Program created a risk of harm to Plaintiff. Honnold Decl. ¶ 13.

### D. The Updated Chrono

On May 9, 2014, Plaintiff received an updated chrono after being seen by a doctor. Pl.'s Dep. at 88:4-11; Pl.'s Opp'n Ex. 3 (ECF No. 49 at 79). Plaintiff's work restrictions remained the same, and limited him from "frequent bending, twisting, neck turning frequently, no lifting > 20 LB."

### F. Defendant's Recommendation for Unassignment

On May 14 or 16, 2014, Plaintiff presented Defendant with documentation that he was taking acetaminophen with codeine. Pl.'s Opp'n Ex. 6 (ECF No. 49 at 96); Honnold Decl. ¶ 10; Pl.'s Opp'n to Def.'s Statement of Undisputed Facts ("DSUF") (ECF No. 48) at 7.

Defendant claims this was the first time that he saw valid documentation that Plaintiff was taking narcotics. Honnold Decl. ¶ 10. Plaintiff, on the other hand, claims that on April 25, 2014, he showed Defendant a Medical Reconciliation form listing his active medications, including for Tylenol 3. Pl.'s Opp'n to DSUF at 9. (As noted below, this dispute ultimately proves immaterial.)

In any event, believing it unsafe to have someone under the influence of narcotics operating electrical machinery, Defendant recommended that Plaintiff be unassigned on that date. Honnold Decl. ¶ 10. He also signed Plaintiff's Work Reassignment form. Pl.'s Dep. at 136:21—137:4.

Until Plaintiff's unassignment on May 25, 2014, he was still assigned to and required to report to the VBM class. Honnold Decl. ¶ 11. During this period, Plaintiff continued to perform the duties described supra. Pl.'s Dep. at 135:18—136:6; Honnold Decl. ¶ 12.

### G. Plaintiff's Mental and Physical Injuries

As a result of Defendant's conduct—which included pressure to sign the safety paperwork, to report to work after his ducated appointments, and to see his counselor—

10

Plaintiff suffered emotional distress and anxiety. Pl.'s Dep. at 139:22—140:2; 145:12—146:1. Plaintiff informed his physical therapist that he was feeling stressed out, but sought no additional treatment. Pl.'s Dep. at 140:3-22. He felt that his weekly physical therapy appointments and his regularly-prescribed medications sufficiently addressed his other ailments, including "[i]tchy scratchy things" near a pinched nerve, a shooting pain down the right side of his arm, and a muscle spasm. Id. at 141:7-18, 142:5-21.

The notes from Plaintiff's physical therapy appointments, however, reveal no complaints and instead reflect Plaintiff's consistent reports of progress, telling his physical therapist that his neck pain was "much better," "my neck is doing better – with reduced tension," "the neck keeps improving," and "my neck is better [and] I can do more now." Pl.'s Opp'n Ex. 2 (ECF No. 49 at 72-75). Moreover, while Plaintiff claims he developed a rash as a result of the stress, he admits this did not occur during his time at the VBM class, but instead at the end of the year when he was taken off of his narcotic medication. Pl.'s Dep. at 143:6-17.

**V.     Discussion**

    **A.     Eighth Amendment**

The Eighth Amendment prohibits inhumane methods of punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). Conditions must not involve the wanton and unnecessary infliction of pain, Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted), thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment, Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with

11

deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

**B.      Analysis**

The undersigned recommends that Defendant's motion for summary judgment be granted.

Plaintiff claims that Defendant refused to immediately unassign Plaintiff from the VBM Program despite knowing that Plaintiff was taking narcotics and had work restrictions. He claims Defendant's conduct, which was in violation of CDCR regulations, amounted to deliberate indifference in violation of Plaintiff's constitutional rights and caused Plaintiff to suffer mental and physical injury.

On the other hand, Defendant has presented undisputed evidence that during Plaintiff's nearly month-long assignment to the VBM Program, Plaintiff was assigned to book study and other jobs falling within his work restrictions. Plaintiff admits that he was never asked to perform, and did not perform, any work beyond those restrictions. The one time that Plaintiff attempted to exceed them by climbing a ladder, Defendant directed him to get off for Plaintiff's own safety. Defendant also repeatedly encouraged Plaintiff to visit his doctor to determine what work he could perform, and he even

12

encouraged Plaintiff to see his counselor for unassignment.[2] Such actions are the antithesis of deliberate indifference. Plaintiff has presented no evidence that his mere presence in the VBM Program or his performance of the tasks that he carried out during his time there posed a danger to his health.

Plaintiff's claim, at its crux, is that Defendant's decision to retain Plaintiff in the VBM Program violated CDCR regulations in light of Plaintiff's narcotic prescription and Plaintiff's refusal to sign the safety paperwork.[3] Even if true, the violation of state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976).

For these reasons, Defendant's motion for summary judgment should be granted.

## VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to file a sur-reply (ECF No. 52) is DENIED;
2. Plaintiff's July 7, 2017, filings (ECF Nos. 51, 53, and 54) are STRICKEN;
3. Defendant's motion to strike (ECF No. 55) is DENIED as moot; and

IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment (ECF No. 39) be GRANTED.

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, Petitioner may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Petitioner is advised that failure to file objections within the specified time may result in the waiver of rights on

---

[2] While Plaintiff makes much of Defendant's directive to obtain an unassignment from his counselor, this directive reveals, at most, Defendant's misunderstanding of the unassignment process. It also reveals that Defendant supported, at some level, Plaintiff's request for unassignment. It does not indicate deliberate indifference.

[3] Plaintiff seems to want to suggest a retaliation claim against Defendant, but the operative pleading was found only to state an Eighth Amendment deliberate indifference claim. (See ECF Nos. 14, 18.)

13

appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: August 2, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE